IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JAY B. GLANZER and )
PENNY L. GLANZER, )
 )
Plaintiffs, )
 )
v. ) Case No. 14-0298-CV-W-REL
 )
BANK OF AMERICA, N.A., )
 )
Defendant. )

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

Before the court is a motion to dismiss the amended complaint on the grounds that (1) the claims for slander of credit are preempted by the Fair Credit Reporting Act, (2) the negligence claim fails because the relationship between and lender and a borrower is one of contractual obligation rather than duty, (3) the breach of contract and promissory estoppel claim fails because it does not identify the contractual terms or promise which defendant allegedly breached and it does not plead any acts to support an allegation of breach of contractual obligation, (4) the Fair Credit Reporting Act claim fails to allege sufficient facts to show that false information was furnished with malice or willful intent to injure plaintiffs, and (5) any claim based on conduct prior to October 5, 2011, is barred by the doctrine of res judicata. Based on the following, defendant's motion to dismiss will be granted in part.

## I.    BACKGROUND

According to the facts alleged in the first amended complaint, which are assumed to be true for purposes of this motion, and the attachments thereto,[1] plaintiffs (husband and wife)

---

[1] "[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect." Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 846 (8th Cir. 2014) (quoting In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)). In considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d at 846 (citing Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

borrowed approximately $251,000 in March 2008 from Platte Valley Bank secured by their residence located at 19310 Quinn Road, Trimble, Missouri. Monthly payments were $1,997.00. The loan was thereafter transferred to BAC Home Loans Servicing, LP. Plaintiffs made their monthly payments through November 2009. In December 2009, plaintiff Penny Glanzer advised BAC that plaintiff Jay Glanzer had lost his job and that she was a student only working part time. BAC advised Penny that plaintiffs qualified for mortgage relief under the Obama Loan Modification Program. BAC sent a packet of materials to plaintiffs which indicated that their monthly payments had been reduced to $677.97; a new loan number had been assigned; and to the extent the $677.96 monthly payments were not sufficient to pay taxes, insurance and principal, the arrearage would be tacked on to the end of the term of the loan. Plaintiffs made their payments each month; and in September 2010, Penny advised BAC that Jay had secured a full-time job, that she had graduated and secured full-time employment, and that they would be able to resume making the $1,977.00 monthly mortgage payments. BAC advised Penny that because she and Jay were now both employed full time, they no longer qualified for the Obama Mortgage Relief program and, as a result, were now in default. On September 14, 2010, BAC sent plaintiffs a notice of intent to accelerate, calling due the entire balance of the loan.

At various times during 2009 and 2010, BAC represented to credit reporting agencies and others that plaintiffs were delinquent in the payment of their mortgage. Plaintiffs were advised that foreclosure of their residence would take place on December 3, 2010. On November 22, 2010, plaintiffs sued BAC in the Circuit Court of Clay County, Missouri. A temporary restraining order was issued to prevent the December 3, 2010, foreclosure sale. On December 23, 2010, BAC removed the lawsuit to federal court (case number 10-1283-CV-W-JTM). While that lawsuit was pending, BAC was taken over by defendant Bank of America, N.A. Plaintiffs and defendant entered into a confidential settlement agreement and release in

2

August 2011 and a Stipulation of Dismissal was signed by the parties on October 5, 2011.

Approximately one year later, plaintiffs and defendant entered into a loan modification agreement in which plaintiffs certified that they were experiencing financial hardship and did not have sufficient income or assets to make their monthly mortgage payments. All unpaid and deferred amounts were added to the principle which totaled $254,733.81, and the loan repayment was for a term of 40 years at 5% interest with monthly payments of $1,673.89 to begin December 1, 2012. Plaintiffs made all payments as required. In October 2013 defendant sent plaintiffs a notice indicating they were past due. The notice showed $13,468.38 in past-due payments and $42,123.89 in outstanding late charges and fees. On February 4, 2014, plaintiffs were notified by Millsap & Singer that a foreclosure sale was scheduled for March 10, 2014. At various times during 2013 and 2014, defendant stated to credit reporting agencies and others that plaintiffs were delinquent in the payment of their mortgage.

On March 4, 2014, plaintiffs filed a petition in Clay County Circuit Court against defendant Bank of America, N.A., and Millsap & Singer Law Firm. Plaintiffs alleged the following:

Count one: Slander of credit alleging that defendants falsely stated to major credit reporting agencies and others that plaintiffs were delinquent in the payment of their mortgage.

Count two: Negligence dealing with the facts described in count one.

Count three: Breach of contract and promissory estoppel.

Count four: Requesting temporary restraining order, preliminary injunction and permanent injunction enjoining the foreclosure sale.

On March 7, 2014, the Clay County Circuit Court entered a temporary restraining order enjoining the foreclosure sale. The parties entered into an agreement canceling the foreclosure sale; therefore, no injunction was required. On March 27, 2014, plaintiffs

3

dismissed the Millsap & Singer law firm as a defendant. On March 31, 2014, defendant Bank of America removed the case to federal district court and the case was assigned to Judge Maughmer as a related case to 10-1283-CV-W-JTM. On April 1, 2014, defendant filed a motion to dismiss the petition for failure to state a claim. On that same day, defendant filed a motion for leave to file a motion to enforce a settlement agreement under seal. On May 7, 2014, plaintiffs filed a motion for leave to file a first amended complaint.

On June 3, 2014, Judge Maughmer entered an Order of Recusal and the case was transferred to me. The following day, I entered an order granting the motion for leave to file a motion to enforce settlement agreement under seal; however, to date, no such motion has been filed. On July 2, 2014, the motion to file an amended complaint was granted, and on July 3, 2014, the first amended complaint was filed, alleging the following:

Count one: Slander of credit. Plaintiffs seek $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

Count two: Negligence. Plaintiffs seek $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

Count three: Breach of contract and promissory estoppel. Plaintiffs seek $1,000,000.00 in compensatory damages.

Count four: Violations of the Fair Credit Reporting Act. Plaintiffs seek "One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00), and as for punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future, Five Hundred Thousand Dollars ($500,000.00) and as for attorney fees, together with their costs herein incurred and expended." It is unclear what form of damages the second million dollars in this count represents.

On July 13, 2014, defendant filed a motion to dismiss the amended complaint. On July

4

15, 2014, plaintiffs filed a response in opposition, and on July 28, 2014, defendant filed a reply.

## II. MOTION TO DISMISS

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Ritchie Capital Management, L.L.C. v. Jeffries, 653 F.3d 755, 764 (8th Cir. 2011); Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1023-24 (8th Cir. 2008), cert. denied, 555 U.S. 1136 (2009). In ruling a motion to dismiss, the court is required to view all facts in the complaint as true. CN v. Willmar Public Schools, 591 F.3d 624, 629 (8th Cir. 2010); Owen v. General Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008). Although a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). Instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (quoting Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999) (quoting Redland Ins. Co. v. Shelter Gen. Ins. Cos., 121 F.3d 443, 446 (8th Cir. 1997))). "The well-pleaded facts alleged in the complaint,

5

not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules."  Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d at 848 (quoting Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1057-1058 (8th Cir. 2002)).

Defendant specifically denies providing any false information about plaintiffs. However for purposes of this motion I will assume that the information was false since that is what is alleged in the amended complaint.

A.    *COUNTS ONE AND TWO*

Defendant argues that counts one and two (defamation of credit and negligence) are entirely preempted by federal law and that even if the court were to find that these claims are not entirely preempted, the claims fail as a matter of law because they do not allege a willful intent to injure as required by the Fair Credit Reporting Act in order to escape the qualified immunity defense provided in that Act.

Plaintiffs argue that these claims are not preempted because they are "based, primarily, upon the fact that on February 14, February 21, February 28, and March 7, 2014, Bank of America published a Trustee's Sale notice in *The Excelsior Springs Standard* wherein it was falsely stated that the Glanzers had defaulted on their home mortgage. . . .  This has nothing to do with what Bank of America may have provided the credit reporting agencies; rather this has to do with Defendant making a false statement in the Glanzer's home-county newspaper that the Glanzers either cannot or will not pay their debts."

In its reply, defendant points out that a plaintiff relying on different grounds of recovery must state facts in support of the separate counts, and that "[f]ailure to plead separate counts results in the assumption that the plaintiff intended to rely on only a single ground; thus, the plaintiff will be confined to the ground that appears to be stated."

6

1.    <u>Preemption based on reporting of false information to consumer reporting agencies</u>

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et. seq., preempts common law claims which are based on furnishing information to consumer reporting agencies. Section 1681s-2(a) states as follows:

> (a)    Duty of furnishers of information to provide accurate information
>        (1)    Prohibition
>               (A)    Reporting information with actual knowledge of errors -
>        A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
>               (B)    Reporting information after notice and confirmation of errors -
>        A person shall not furnish information relating to a consumer to any consumer reporting agency if--
>                      (i)    the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
>                      (ii)    the information is, in fact, inaccurate.

The FCRA contains two, arguably overlapping, preemption provisions. The doctrine of preemption derives from the Supremacy Clause of Article VI of the United States Constitution which provides, in pertinent part, that the laws of the United States "shall be the supreme Law of the Land." U.S Const., art. VI, § 1, cl. 2. Preemption may be either express or implied and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." <u>Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta</u>, 458 U.S. 141, 152-153 (1982). Section 1681t(b)(1)(F) of the FCRA provides that, "No requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." This provision is known as the "absolute immunity" provision and was part of the Consumer Credit Reporting Reform Act of 1996. Section 1681h(e) is the FCRA's original preemption section. In it, Congress preempted all state actions against the furnishers of credit information that are "in the nature of defamation, invasion of privacy, or negligence . . . except as to false information furnished with malice or

7

willful intent [to] injure [the] customer." 15 U.S.C. § 1681h(e). Section 1681h(e), therefore, permits state actions to survive a motion to dismiss, so long as their proponents allege malice or willful intent.

Clearly any defamation of credit and negligence claims in the amended complaint which are based on defendant's allegedly reporting inaccurate information to a credit reporting company are preempted by the FCRA. Plaintiffs' attempt to escape dismissal of those claims due to preemption consists of the following argument: These claims are not preempted because they are "based, primarily, upon the fact that on February 14, February 21, February 28, and March 7, 2014, Bank of America published a Trustee's Sale notice in *The Excelsior Springs Standard* wherein it was falsely stated that the Glanzers had defaulted on their home mortgage. . . . This has nothing to do with what Bank of America may have provided the credit reporting agencies; rather this has to do with Defendant making a false statement in the Glanzer's home-county newspaper that the Glanzers either cannot or will not pay their debts."

First, I note that in the original petition, the Trustee's Sale notice in *The Excelsior Springs Standard* was never mentioned. In the amended complaint, this notice of sale is mentioned in two paragraphs out of the 16-page complaint. Counts one and two of the amended complaint are lengthy and focus almost exclusively on defendant's report of inaccurate information to consumer reporting agencies:

COUNT I
CLAIM AGAINST BANK OF AMERICA, N.A. FOR DEFAMATION
(SLANDER OF CREDIT)

COME NOW Plaintiffs and for Count I of their cause of action against Defendant Bank of America, N.A. state:

THE PARTIES

1. Plaintiffs are husband and wife and are, and at all relevant times have been, citizens and residents of Clay County, Missouri, residing at the address set forth in the caption.

8

2. Defendant Bank of America, N.A. (hereinafter sometimes referred to as "Bank of America") is and at all relevant times has been a federally-chartered bank, doing business in Clay County, Missouri and authorized to do business in the State of Missouri. Defendant Bank of America, N.A. is amenable to service of process in the manner set forth in the caption.

BACKGROUND

3. In approximately March, 2008, Plaintiffs borrowed approximately $251,000.00 from Platte Valley Bank and secured the loan with a Deed of Trust on their real estate and the improvements thereon in Clay County, Missouri. The mailing address of Plaintiffs' home is 19310 Quinn Road, Trimble, Missouri 64492 . . . .

4. Pursuant to the terms and conditions of the aforesaid home loan, Plaintiffs were to pay to Platte Valley Bank the sum of approximately $1,977.00 on the first (1st) day of each month, which sum represented payment of principal, interest, taxes and insurance.

5. Plaintiffs were advised that their aforesaid obligation to Platte Valley Bank was transferred to BAC Home Loans Servicing, LP [hereinafter sometimes referred to as "BAC"] and, thereafter, Plaintiffs made their monthly payments of $1,977.00 to BAC until and including the November 1, 2009 payment.

6. In December, 2009, Plaintiff Penny Glanzer (hereinafter referred to as "Penny"), telephoned BAC and advised BAC that Plaintiff Jay Glanzer (hereinafter referred to as "Jay") had lost his job, that she was a student who was only working part time, and asked if she and her husband would qualify for any mortgage relief. The phone conversation lasted approximately 30 minutes and, at the conclusion of the conversation, BAC advised Penny that she and Jay did in fact qualify for mortgage relief under the Obama Loan Modification Program and that BAC would FedEx a packet of materials to them.

7. In December, 2009, Jay and Penny received the packet of materials from BAC, which package of materials advised Plaintiffs that:

(a) their monthly payment had been reduced from $1,977.00 per month to $677.96 per month, effective December 1, 2009;

(b) a new loan number had been assigned to Plaintiffs;

(c) Plaintiffs could no longer make their payments on-line but, instead, had to make their payments by check;

(d) Plaintiffs' monthly payments to BAC would have to be sent to a new address; and

(e) to the extent that the $677.96 monthly payments were not sufficient to pay taxes, insurance, and reduce the principal on the loan, the arrearage would be tacked on to the end of the term of the loan and could be paid then.

8. Jay and Penny honored the aforesaid agreement and mailed their checks to BAC along with temporary payment coupons (printed on pink paper) that BAC provided to Plaintiffs and which showed the new monthly payment of $677.96. In fact, the correspondence that Jay and Penny received from BAC stated: "If you and BAC Home Loans Servicing, LP have entered into an agreement to address your monthly payments, please make payments in agreement to address your monthly payments, please make payments in accordance with this agreement."

9. In September, 2010, Plaintiffs' fortunes improved in that:

(a) Jay had secured full-time employment; and

(b) Penny had graduated from nursing school and had secured full-time employment as well. Penny telephoned BAC and advised BAC of Plaintiffs' improved circumstances and

9

advised BAC that Plaintiffs would now be able to resume paying $1,977.00 per month. BAC responded by telling Penny that, because she and Jay were now both employed full-time, they no longer qualified for the Obama Mortgage Relief program and, as a result, they were now in default.

10. Then, on or about September 14, 2010, without any just cause or excuse, without any basis in law or fact, and in direct violation of Plaintiffs' aforesaid agreement with BAC, BAC sent to Plaintiffs a "Notice of Intent to Accelerate", purporting to call due the entire balance of Plaintiffs' aforesaid loan.

11. Further evidencing that Plaintiffs were never delinquent in their obligation to BAC is this: In 2009, Jay and Penny sustained a casualty loss for which they were paid approximately $30,000.00 by their insurer, Farmers Insurance Company. During the period between November, 2009 and September, 2010, Plaintiffs mailed to BAC a series of checks from Farmer's Insurance Company, totaling approximately $30,000.00. Each of the checks had been endorsed over to BAC by Plaintiffs. Had BAC believed that Plaintiffs were behind in their payments (and, in fact, Plaintiffs were not behind in their payments), BAC could have retained the money and applied the funds to any alleged arrearage. Instead, BAC deposited each check and issued its own check to Plaintiffs representing, in each instance, the full amount of each Farmer's check. In one instance, in approximately February, 2010, Plaintiffs sent to BAC a Farmer's check in the sum of $3,328.30 (which Plaintiffs had endorsed) and accompanied the check with a letter requesting BAC to keep these funds and apply them to the monthly payments of $677.96 that were to become due in March, April, May, June, July, and August, 2010 and, in fact, BAC did so.

12. Plaintiffs have timely made each monthly payment and have never been delinquent in the making of any payment.

13. From the point in time that BAC purchased the loan from Platte Valley Bank, BAC made numerous misstatements and misrepresentations to Plaintiffs and made numerous promises and given numerous assurances that BAC later disavowed and/or breached.

14. At various times in 2009 and 2010,[2] BAC stated and represented to others, including the major credit reporting agencies, that Jay and Penny were delinquent in the payment of their mortgage. When Jay and Penny pointed out to BAC that, in fact, they were not delinquent in the payment of their mortgage and that they have never been delinquent in the payment of their mortgage, BAC falsely stated and represented to others, including the major credit reporting agencies, that Jay and Penny were, indeed, delinquent in the payment of their mortgage.

15. BAC published and disseminated the statements contained in ¶14 among those in the financial, banking, and credit industries, including banks and credit bureaus.

16. BAC was at fault in publishing and disseminating such statements.

17. Such statements tended to expose Jay and Penny to contempt and ridicule and to deprive Jay and Penny of the benefit of public confidence and social associations.

18. Such statements were read by those in the financial, banking, and credit industries, including banks and credit bureaus and were read by the others, including the general public in and around Clay County, Missouri.

19. As the direct and proximate result of - and the reasonably foreseeable consequence of - BAC's aforesaid conduct, Jay and Penny suffered and sustained humiliation,

---

[2]I note that the conduct which allegedly occurred in 2009 and 2010 is not the subject of this lawsuit but was addressed in the previous lawsuit which was settled by the parties.

10

embarrassment, emotional distress, injury to credit, injury to reputation, injury to financial standing, and financial hardship.

20. BAC's publication of the statements contained in ¶14 was done with knowledge that the statements were false or with reckless disregard for whether the statements were true or false at a time when BAC had serious doubt as to whether the statements were true.

## THE FIRST FORECLOSURE

21. BAC advised Plaintiffs that they were going to foreclose on Plaintiffs' home on December 3, 2010.

22. All as more fully set forth above, BAC had no legal or equitable right to foreclose on Plaintiffs' home.

## THE 2010 LAWSUIT

23. On November 22, 2010, Plaintiffs sued BAC in the Circuit Court of Clay County, Missouri and the case number assigned to that lawsuit was 10 CY CV 13896. Said lawsuit will hereinafter sometimes be referred to as "the 2010 Lawsuit".

24. A true and accurate copy of the Petition that initiated the 2010 Lawsuit is attached hereto as "Exhibit 1."

25. On December 2, 2010, the Circuit Court of Clay County, Missouri entered a Temporary Restraining Order whereby it enjoined the December 3, 2010 foreclosure sale.

26. A true and accurate copy of the December 2, 2010 Temporary Restraining Order entered in the 2010 Lawsuit is attached hereto as "Exhibit 2."

27. On December 23, 2010, BAC removed the 2010 lawsuit to the United States District Court for the Western District of Missouri, where it was assigned Case No. 4:10 CV 01283 JTM.

28. At some point during the pendency of the 2010 lawsuit, BAC was taken over by Bank of America, N.A. Thereafter, the issues raised in the 2010 lawsuit were fully resolved and, in 2011, Defendant Bank of America, N.A. and Plaintiffs Jay and Penny Glanzer entered into and executed a Confidential Settlement Agreement and Release.

29. The Confidential Settlement Agreement and Release was signed by Defendant Bank of America, N.A. on August 9, 2011 and was signed by Plaintiffs Jay and Penny Glanzer on August 17, 2011.

30. Thereafter, on October 5, 2011, the parties filed their Stipulation of Dismissal.

31. A true and accurate copy of the October 5, 2011 Stipulation of Dismissal is attached hereto as "Exhibit 3."

## RECENT DEVELOPMENTS

32. Despite the fact that in October - November, 2012, Plaintiffs and Defendant Bank of America entered into a Loan Modification Agreement (which is attached hereto as "Exhibit 4"), and despite the fact that Plaintiffs have timely paid all sums due pursuant to said Loan Modification Agreement, Bank of America again attempted to foreclose on Plaintiffs' home. For instance:

(a) In late 2013, Bank of America sent Plaintiffs an "Important Notice" stating, inter alia, that Plaintiffs are $57,343.42 past due in the obligations to Bank of America.

(b) A true and accurate copy of the "Important Notice" is attached hereto as "Exhibit 5."

11

(c) On February 4, 2014, Millsap & Singer mailed a letter to Plaintiffs stating, inter alia, that "[w]e have scheduled a foreclosure sale to occur on March 10, 2014."

(d) A true and accurate copy of the February 4, 2014 Millsap & Singer letter is attached hereto as "Exhibit 6."

## THE CAUSE OF ACTION

33. Plaintiffs have timely made each monthly payment and have never been delinquent in the making of any payment.

34. At various times in 2013 and 2014, Defendant Bank of America stated and represented to others, including the major credit reporting agencies, that Jay and Penny were delinquent in the payment of their mortgage and that, as a result, a foreclosure sale had been scheduled. When Jay and Penny pointed out to Defendant Bank of America that, in fact, Plaintiffs were not delinquent in the payment of their mortgage and that they have never been delinquent in the payment of their mortgage, Defendant Bank of America falsely stated and represented to others, including a local newspaper and the major credit reporting agencies, that Jay and Penny were, indeed, delinquent in the payment of their mortgage and that, as a result, a foreclosure sale had been scheduled. A true and accurate copy of the foreclosure notice that was published by Defendant Bank of America in *The Excelsior Springs Standard* is attached here to as "Exhibit 7."

35. Defendant Bank of America published and disseminated the statements contained in ¶34 among those in the financial, banking, and credit industries, including banks and credit bureaus as well as to the general public via a local newspaper, *The Excelsior Springs Standard*.

36. Defendant Bank of America was at fault in publishing and disseminating such statements.

37. Such statements tended to expose Jay and Penny to contempt and ridicule and to deprive Jay and Penny of the benefit of public confidence and social associations.

38. Such statements were read by those in the financial, banking, and credit industries, including banks and credit bureaus and were read by the others, including the general public in and around Clay County, Missouri.

39. As the direct and proximate result of - and the reasonably foreseeable consequence of - Defendant Bank of America's aforesaid conduct, Jay and Penny have suffered and sustained and will continue to suffer and sustain humiliation, embarrassment, emotional distress, injury to credit, injury to reputation, injury to financial standing, and financial hardship.

40. Defendant Bank of America's publication of the statements contained in ¶34 was done with knowledge that the statements were false or with reckless disregard for whether the statements were true or false at a time when Defendant Bank of America had serious doubt as to whether the statements were true, thereby entitling Jay and Penny to an award of punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future.

WHEREFORE, Plaintiffs Jay and Penny Glanzer pray judgment against Defendant Bank of America, N.A. on Count I of their First Amended Complaint in the sum of $1,000,000.00 to compensate them for their aforesaid injuries and damages, in the sum of $1,000,000.00 as and for punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future, together with their costs herein incurred and expended.

12

<div style="border:1px solid black; padding:10px;">

### COUNT II
### CLAIM AGAINST BANK OF AMERICA, N.A. FOR NEGLIGENCE

COME NOW Plaintiffs and for Count II of their cause of action and for their further claim against Defendant Bank of America, N.A. state:

1. They incorporate herein each and every statement and allegation contained in Count I of this First Amended Complaint.

2. Bank of America owed a duty to Jay and Penny to prepare, publish, and disseminate accurate and truthful information.

3. Bank of America owed a duty to Jay and Penny to use reasonable care in the preparation and dissemination of all credit and debt information.

4. Bank of America knew, or should have known, that the credit information and/or reports that Bank of America prepared, published, and/or disseminated were inaccurate, incomplete, and false.

5. Bank of America breached their duties, all as more fully set forth hereinabove.

6. As the direct and proximate result of - and as the reasonably foreseeable consequence of - Bank of America's aforesaid breaches of duties, Jay and Penny suffered and sustained and will continue to suffer and sustain the injuries and damages set forth hereinabove.

7. Bank of America knew, or should have known, that its conduct created a high likelihood of injury and damage to Jay and Penny and showed conscious indifference to and reckless disregard of Jay and Penny's rights.

WHEREFORE, Plaintiffs Jay and Penny Glanzer pray judgment on Count II of their First Amended Complaint against Defendant Bank of America in the sum of $1,000,000.00 as and for compensatory damages to compensate them for their aforesaid injuries and damages and $1,000,000.00 as and for punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future, together with their costs herein incurred and expended.

</div>

Without the small section highlighted in blue which deals with publication of the foreclosure sale in a local newspaper, these two counts would clearly be preempted by the FCRA. Plaintiffs argue that adding these sentences prevents dismissal based on preemption because the counts are "based, primarily, upon the fact that on February 14, February 21, February 28, and March 7, 2014, Bank of America published a Trustee's Sale notice in *The Excelsior Springs Standard* wherein it was falsely stated that the Glanzers had defaulted on their home mortgage. . . . This has nothing to do with what Bank of America may have provided the credit reporting agencies; rather this has to do with Defendant making a false statement in the Glanzer's home-county newspaper that the Glanzers either cannot or will not pay their debts." This argument is without merit.

13

Plaintiffs' own amended complaint states, at paragraph 32c that, "[o]n February 4, 2014, Millsap & Singer mailed a letter to Plaintiffs stating, inter alia, that '[w]e have scheduled a foreclosure sale to occur on March 10, 2014.'" Further, exhibit 7 to plaintiffs' amended complaint clearly shows that Millsap & Singer placed the ad in *The Excelsior Springs Standard*. Millsap & Singer is no longer a party to this lawsuit as plaintiff dismissed that defendant on March 24, 2014. The amended complaint does not allege that the actions of Millsap & Singer can be imputed to defendant Bank of America.

Therefore, there is no factual basis for plaintiffs' claims of slander of credit or negligence against defendant Bank of America. Simply adding a sentence to this lengthy complaint stating that Bank of America put a foreclosure notice in the newspaper, when the remainder of the complaint establishes that another party published that notice and that the basis for the claims against Bank of America is its report of inaccurate information to consumer credit reporting agencies (which is covered by the FCRA), does not provide a sufficient factual basis to withstand a motion to dismiss. A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Counts one and two of plaintiffs' amended complaint fail on this ground and are preempted by the FCRA. Therefore, defendant's motion to dismiss these counts will be granted.

Although I have found that counts one and two are preempted by the FCRA and will be dismissed on that basis, I will address defendant's alternate bases for dismissal of these counts.

2.    Preemption based on absence of malice

Defendant argues alternatively that counts one and two fail because they do not allege malice or willful intent to injure. The FCRA preempts all state actions against the furnishers of

14

credit information that are "in the nature of defamation, invasion of privacy, or negligence . . . except as to false information furnished with malice or willful intent [to] injure [the] customer." 15 U.S.C. § 1681h(e). Section 1681h(e), therefore, requires an allegation of malice or willful intent in order to for a state law claim to survive a motion to dismiss based on preemption.

Plaintiffs point to paragraph 40 in count one which reads as follows:

Defendant Bank of America's publication of the statements contained in ¶34 was done with knowledge that the statements were false or with reckless disregard for whether the statements were true or false at a time when Defendant Bank of America had serious doubt as to whether the statements were true, thereby entitling Jay and Penny to an award of punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future.

Although plaintiffs also point to paragraphs 12 and 22 of count four, those paragraphs do not appear in counts one or two and were not incorporated by reference into counts one or two and are therefore irrelevant for purposes of this discussion.

Section 1681h(e) establishes that there must be two different types of slander of credit/negligence claims -- one type which would be preempted by the FCRA and another type which would not be, the latter being a claim dealing with "false information furnished with malice or willful intent [to] injure [the] customer." There is no separate cause of action in Missouri for slander of credit, rather, such a claim is based on the general defamation cause of action. In Carter v. Willert Home Products, Inc., 714 S.W.2d 506 (Mo. 1986), the Supreme Court of Missouri allowed recovery for slanderous statements made by the plaintiff's employer that negatively affected the plaintiff's credit, but did not specifically recognize the cause of action for slander of credit.

The elements of a defamation claim are (1) publication, (2) of a defamatory statement, (3) that identifies the claimant, (4) that is false, (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation. Kisner v. Bank of America, N.A. 2012 WL 601239, (W.D. Mo., February 23, 2012); Gray v. AT&T Corp., 357 F.3d 763, 765

15

(8th Cir. 2004) (citing Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. 2000) (en banc)). The requisite degree of fault for a private figure is negligence; but to recover punitive damages, a plaintiff must prove malice. Overcast v. Billings Mut. Ins. Co., 11 S.W.3d at 70; Englezos v. Newspress and Gazette Co., 980 S.W.2d 25 (Mo. App. 1998). "Actual malice" is defined as a false statement made "with knowledge that it was false, or with reckless disregard for whether it was true or false at a time when defendant had serious doubt as to whether it was true." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d at 70 (quoting Snodgrass v. Headco Industries, Inc., 640 S.W.2d 147 (Mo. App. 1982)); Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. 1993).

Because plaintiffs' amended complaint alleges that defendant acted "with knowledge that the statements were false or with reckless disregard for whether the statements were true or false at a time when Defendant Bank of America had serious doubt as to whether the statements were true," malice has been pled. As a result the preemption provided for in section 1681h(e) does not apply.

3.    **Absence of duty**

Another alternate theory of dismissal for count two offered by defendant is absence of duty. I am unclear from plaintiffs' response whether they concede this issue and agree that count two should be dismissed or whether they oppose defendant's motion on this basis. Plaintiffs' response to this argument reads in its entirety:

> Bank of America next argues that it does not owe a special duty to the Glanzers. The Glanzers agree.

> Bank of America next argues that it does not owe a fiduciary duty to the Glanzers. The Glanzers agree.

> Bank of America owes to the Glanzers a duty to exercise ordinary care, just as all citizens owe a duty to others to exercise ordinary care. In addition, the rights and duties of Bank of America vis-a-vis the Glanzers are governed by certain written documents (e.g., notes, deeds of trust, modification agreements, etc.).

16

A person does not need to owe a special duty to another to be held liable for intentionally, wrongfully and maliciously publishing in a newspaper that a person has defaulted on his or her home mortgage. The general duty of ordinary care will cover that.

Because I am unclear what this means, I will analyze defendant's argument assuming that plaintiffs oppose it.

A common-law action for negligence requires proof of (1) the existence of a duty, (2) breach of that duty, and (3) injury proximately caused by the breach. <u>Parr ex rel. Waid v. Breeden,</u> -- S.W.3d --, 2014 WL 3864710 (Mo. App., August 6, 2014). "There can be no tort in the absence of a duty." <u>Duncan v. Andrew County Mut. Ins. Co.,</u> 665 S.W.2d 13, 19 (Mo. App. 1983). The existence of a duty is a question of law for the court. <u>Koch v. Southwestern Elec. Power Co.,</u> 544 F.3d 906, 908 (8th Cir. 2008). See also <u>Parr ex rel. Waid v. Breeden,</u> supra.

"Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance." <u>Pool v. Farm Bureau Town & Country Ins. Co. of Missouri</u>, 311 S.W.3d 895, 907 (Mo. App. 2010) (quoting <u>Farmers Ins. Co., Inc. v. McCarthy,</u> 871 S.W.2d 82, 87 (Mo. App. 1994). Ordinarily there is no confidential or fiduciary relationship between debtor and creditor. <u>Neal v. Sparks</u>, 773 S.W.2d 481, 486-487 (Mo. App. 1989) (citing <u>Centerre Bank of Kansas City v. Distributors, Inc.,</u> 705 S.W.2d 42, 53 (Mo. App. 1985)). Normal dealings between a borrower and a mortgage lender constitute nothing more than a debtor and secured creditor relationship. <u>Chalet Apartments, Inc. v. Farm & Home Sav. Ass'n, Inc.,</u> 658 S.W.2d 508, 510 (Mo. App. 1983).

Count two of the amended complaint alleges that "Bank of America owed a duty to Jay and Penny to prepare, publish, and disseminate accurate and truthful information. Bank of America owed a duty to Jay and Penny to use reasonable care in the preparation and

17

dissemination of all credit and debt information." This is not sufficient to establish a legally-recognizable duty. A duty cannot be created by a unilateral decision to repose trust and confidence. Plaintiffs must show that the contractual relationship between the parties as debtor and mortgage lender changed when defendant disseminated information about plaintiffs' alleged default. Wood & Huston Bank v. Malan, 815 S.W.2d 454, 458 (Mo. App. 1991). No such showing has been made. Plaintiffs' bald allegation that Bank of America owed plaintiffs a duty does turn a contractual claim into a negligence claim.

Count two will be dismissed on this additional ground.

## B.   *BREACH OF CONTRACT AND PROMISSORY ESTOPPEL*

Defendant argues that count three of plaintiffs' amended complaint fails to state a claim for relief because it fails to set out the plaintiffs' rights or the defendant's obligations under the contract.

A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 850 (8th Cir. 2014) (citing Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010) (en banc)). "A valid contract contains the essential elements of 'offer, acceptance, and bargained for consideration.'" Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d at 850 (citing Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members, 364 S.W.3d 615, 622 (Mo. App. 2012) (quoting Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. 1988) (en banc))). A plaintiff fails to state a claim for breach of contract if he does not set out his rights or the defendant's obligations under the contract. Trotter's Corp. v. Ringleader Rests., Inc., 929 S.W.2d 935, 941 (Mo. App. 1996).

Count three, in its entirety, reads as follows:

COME NOW Plaintiffs and for Count III of their cause of action against Bank of America state:

1.    They incorporate herein each and every statement and allegation contained in Counts I and II of this First Amended Complaint.

2.    In violation of the aforesaid promises and in breach of its contract with Plaintiffs, Bank of America is now attempting to foreclose on Plaintiffs' home.

3.    As the direct result of Bank of America's aforesaid breach of contract, Plaintiffs have sustained damage.

4.    Further, Plaintiffs, reasonably and in good faith relied upon Bank of America's promises (all as more fully set forth hereinabove) and Bank of America is estopped from refusing to honor said promises.

5.    As the direct result of Bank of America's refusal to honor its aforesaid promises, Plaintiffs have suffered and sustained and will continue to suffer and sustain the injuries and damages set forth above.

WHEREFORE, Plaintiffs pray judgment against Defendant Bank of America, N.A. in the sum of $1,000,000.00 compensatory damages, together with their costs herein incurred and expended.

Although plaintiffs do not set out the terms of the contract in this count, they attached the mortgage contract as an exhibit to the amended complaint. They also do not specifically identify what provisions of the contract were breached; however, plaintiffs' amended complaint is lengthy and describes the alleged conduct upon which it relies to support these claims, and those descriptive paragraphs are incorporated into this count. A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Because the contract was attached to the amended complaint and because the amended complaint describes the conduct about which plaintiffs complain, I do not find that it appears beyond doubt that they can prove no set of facts which would entitle them to relief. I find that the essential elements of a breach of contract claim and

19

a factual basis for this claim have been pled. Therefore, defendant's motion to dismiss count three will be denied.

## C.    *VIOLATIONS OF FAIR CREDIT REPORTING ACT*

Defendant argues that plaintiffs' FCRA claim (count four) fails as a matter of law because section 1681h(e) provides qualified immunity unless the defendant furnished false information "with malice or willful intent to injure." Curiously, plaintiffs do not address this argument in their response unless it was their intent to sprinkle their position as to this count throughout their response addressing defendant's motion to dismiss counts one, two and three, leaving it to me to figure out what they intend their response to be.

Count four is entitled, "Claim Against Bank of America, N.A. for Violations of Fair Credit Reporting Act". There are clearly multiple claims listed in this count four.

COME NOW Plaintiffs and for Count IV of their cause of action against Defendant Bank of America state:

1.      They incorporate herein each and every statement and allegation contained in Counts I, II, and III of this First Amended Complaint.

2.      Defendant Bank of America, in the regular and ordinary course of its business, furnishes credit information to consumer credit reporting agencies.

3.      Defendant Bank of America provides information to credit reporting agencies and/or prepares and disseminates consumer credit reports.

4.      Defendant Bank of America breached its duties, pursuant to 15 U.S.C. §1681, et seq., by failing to follow reasonable procedures to assure maximum possible accuracy of the information provided to credit reporting agencies and information contained in its credit report about Plaintiffs and to -- within a reasonable time -- re-investigate and promptly delete disputed information that is inaccurate or unverifiable. In particular, Defendant reported to Equifax, and the Equifax Credit Report dated February, 21, 2014 sets forth the following information:

(a)      Plaintiffs owed $254,230.00 to Bank of America,
(b)      Plaintiffs' account was over 120 days late,
(c)      Plaintiffs' past due amount was $18,721.00, and
(d)      The account was 120 + days past due.

5.      Plaintiffs notified Equifax, in writing, on or about February 21, 2014 and again on or about March 7, 2014, that the above information was false and that they disputed the above information, and after Bank of America was notified in February, 2014 and March, 2014 by Equifax that Plaintiffs were disputing the accuracy of the above information, Defendant Bank of America again published -- and repeatedly published -- the

inaccurate information about Plaintiffs, set forth in the preceding paragraph, which information was and is inaccurate, with this exception: Bank of America falsely reported that the amount past due that Plaintiffs owed had increased from $18,721.00 to $20,472.00.

6. Defendant Bank of America repeatedly disseminated this false information concerning Plaintiffs, all as more fully set forth hereinabove.

7. Plaintiffs and Equifax contacted Defendant Bank of America, requesting that Defendant Bank of America promptly correct the false and adverse information that Defendant Bank of America had caused to be placed on Plaintiffs' credit report.

8. After being advised by Equifax that Plaintiffs were contesting the accuracy of the aforesaid false and adverse information:

    (a) Defendant Bank of America failed and refused to conduct an investigation, review Plaintiffs' accounts, and remove the false and adverse information, and

    (b) Defendant Bank of America failed to follow reasonable procedures to ensure that the reported credit information was correct.

9. Equifax, a credit reporting agency, contacted Defendant Bank of America, advising Defendant Bank of America that Plaintiffs had requested that Equifax and Defendant Bank of America promptly correct the false and adverse information that Defendant Bank of America had caused to be placed on Plaintiffs' credit report.

10. Defendant Bank of America, after being contacted by Equifax, and after being advised by Equifax that Plaintiffs had requested that Equifax and Defendant Bank of America promptly correct the false and adverse information that Defendant Bank of America had caused to be placed on Plaintiffs' credit report, failed to re-investigate the false credit claim or, in the alternative, it failed to take reasonable steps to do so.

11. Defendant Bank of America knew or should have known of the falsity of the adverse information.

12. Defendant Bank of America prepared and published the aforesaid false information concerning Plaintiffs with full knowledge of its falsity.

13. Defendant Bank of America prepared and published the aforesaid false information concerning Plaintiffs without any indication that Plaintiffs disputed the false information.

14. Defendant Bank of America failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiffs' credit reports.

15. Defendant Bank of America furnished information to consumer credit reporting agencies with actual knowledge of errors or, in the alternative, by consciously disregarding the fact that the information was inaccurate.

16. Defendant Bank of America furnished inaccurate information to consumer credit reporting agencies after being notified by Plaintiffs and by consumer reporting agencies at the address specified by Defendant Bank of America that the information was inaccurate.

17. The information supplied by Defendant Bank of America to consumer credit reporting agencies was, in fact, inaccurate.

18.     After being notified by consumer credit reporting agencies that Plaintiffs were disputing the accuracy of the information that Defendant Bank of America had supplied to the consumer credit reporting agencies, Defendant Bank of America failed to promptly notify consumer credit reporting agencies that it had supplied inaccurate information and failed to provide corrections or any additional information to consumer credit reporting agencies necessary to make the information provided complete and accurate.

19.     Defendant Bank of America failed to furnish all of the information required by 15 U.S.C. §1681s2 and all of its subparts.

20.     Defendant Bank of America, after receiving notice from the consumer credit reporting agencies of the consumer's dispute, failed to:

 (a) conduct an investigation with respect to the disputed information;

 (b) review all relevant information provided by Plaintiffs;

 (c) report the results of the investigation to the consumer credit reporting agencies;

 (d) after finding that the information was incomplete or inaccurate, failed to report those results to the consumer credit reporting agencies.

21.     Defendant Bank of America, after receiving notice from the consumer credit reporting agencies of the consumer's dispute, failed to follow reasonable procedures to assure maximum possible accuracy of the information it supplied to consumer credit reporting agencies for the purpose of placing the information into Plaintiffs' credit reports.

22.     Defendant Bank of America's actions were intentional, wilful, reckless, and grossly negligent.

23.     As the direct and proximate result of -- and the reasonably foreseeable consequence of -- Defendant Bank of America's aforesaid conduct, Plaintiffs have suffered and sustained and will continue to suffer and sustain humiliation, embarrassment, emotional distress, injury to credit, injury to reputation, injury to financial standing, financial hardship, and have incurred and will continue to incur attorney fees in an effort to remedy the problems caused by Defendant Bank of America's conduct and in order to prosecute this litigation.

WHEREFORE, Plaintiffs pray judgment against Defendant Bank of America in the sum of One Million Dollars ($1,000,000.00) compensatory damages, One Million Dollars ($1,000,000.00), as and for punitive damages to punish Defendant Bank of America and to deter Defendant Bank of America and others from like conduct in the future, Five Hundred Thousand Dollars ($500,000.00) as and for attorney fees, together with their costs herein incurred and expended.

Under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et. seq., if a consumer notifies a consumer reporting agency of a dispute regarding the completeness or accuracy of information contained in the consumer's credit report, the agency is required to reinvestigate the disputed information. 15 U.S.C. § 1681i(a). As part of its reinvestigation, the agency must notify the furnisher of the credit information of the dispute. 15 U.S.C. § 1681i(a)(2). Upon notice of a

dispute from a credit reporting agency, section 1681s-2(b)(1) of the FCRA requires the furnisher of the information to conduct an investigation regarding the dispute and to report its findings accordingly.

Section 1681o of the FCRA provides consumers with a cause of action for negligent noncompliance with section 1681s-2(b),[3] permitting the recovery of actual damages, costs and attorney's fees. Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F. Supp. 2d 1135, 1142-1143 (E.D. Mo. 2000) (citing Campbell v. Baldwin, 90 F. Supp. 2d 754, 756 (E.D. Tex. 2000) (consumers have private causes of action against furnishers of credit information who violate section 1681s-2(b)). Likewise, section 1681n provides a cause of action for willful violations, entitling a consumer to recover punitive damages in addition to the damages available for negligent noncompliance. Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F. Supp. 2d at 1143. To prevail on a claim for willful noncompliance with the FCRA and to recover punitive damages, a plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others. Id. at 1144 (citing Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998); Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3rd Cir. 1997)). "Plaintiff need not show malice or evil motive." Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F. Supp. 2d at 1144.

The requirements are different for a claim of defamation or negligence under the FCRA. For these claims, section 1681h(e) provides qualified immunity unless the defendant furnished

---

[3]"After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall -
(A)     conduct an investigation with respect to disputed information;
(B)     review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2);
(C)     report the results of the investigation to the consumer reporting agency; and
(D)     if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information...."

23

false information with malice or willful intent to injure. <u>Thornton v Equifax, Inc.,</u> 619 F.2d 700, 703 (8th Cir.), <u>cert</u>. <u>denied</u>, 449 U.S. 835 (1980). "A statement is made with malice if the speaker made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" <u>Id</u>. (citing <u>New York Times v. Sullivan</u>, 376 U.S. 254 (1964). "Reckless disregard requires evidence that the speaker entertained actual doubt about the truth of the statement." <u>Bruce v. First U.S.A. Bank, Nat. Ass'n</u>, 103 F. Supp. 2d at 1145.

> The showing of malice or willful intent to injure under § 1681h(e) is a higher standard of proof than the willfulness required for punitive damages under § 1681n. Additionally, of course, it is a different factual issue: a plaintiff can recover punitive damages under the FCRA where the defendant willfully failed to conduct an investigation, while to prevail on a defamation claim the plaintiff must show that a false statement was made with knowledge or reckless disregard for its truth.

<u>Id</u>. (citing <u>Thornton v. Equifax</u>, 619 F.2d at 706).

Federal Rule of Civil Procedure 10(b) provides as follows:

> **Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence -- and each defense other than a denial -- must be stated in a separate count or defense.

Although all of plaintiff's claims in count four are founded on the same general occurrence, by including multiple claims in one "count," confusion results. For instance, in count four, plaintiffs have pled various violations of the FCRA:

- Failed to follow reasonable procedures to assure accuracy of information

- Failed to reinvestigate

- Failed to delete disputed information that is inaccurate or unverifiable

- Disseminated false information

- Furnished inaccurate information to consumer credit reporting agencies

- Failed to notify consumer credit reporting agencies that it had supplied inaccurate information

- ☐ Failed to furnish all of the information required by 15 U.S.C. § 1681s2 (see footnote 3 on page 23)

Additionally, count four alleges multiple states of mind:

- ☐ Had full knowledge of the falsity of its information

- ☐ Had actual knowledge of errors

- ☐ Consciously disregarded the fact that the information was inaccurate

- ☐ Was intentional willful, reckless and grossly negligent

One need only attempt to draft jury instructions for count four to see how unclear the allegations are. Not only are the elements of the various claims different, but the level of misconduct varies as well, from negligent to malicious.

Because count four includes allegations of various violations of the Fair Credit Reporting Act, each of which require proof of different elements and different types of misconduct, this count will be dismissed without prejudice and plaintiffs will be given an opportunity to file an amended complaint clarifying their claims under the FCRA.[4]

## D.   RES JUDICATA

Finally, defendant argues that if the entire amended complaint is not dismissed, "any claim based upon actions allegedly taken before October 5, 2011 should be dismissed with prejudice because such claims are barred by res judicata."

Res judicata bars further litigation if (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was final judgment on the merits; and (3) the same

---

[4]I note here that count four repeats many times the same allegations. It is my hope that if plaintiffs choose to file an amended complaint, the new counts not only separate claims for clarity but that each count be organized to avoid such unnecessary repetition. In addition, in this count plaintiffs seek damages of one million dollars in compensatory damages, a half a million dollars in punitive damages, attorney's fees and costs, and another one million dollars of unidentified damages. Plaintiffs are directed to identify the different types of damages in any prayer.

Case 4:14-cv-00298-REL   Document 41   Filed 11/20/14   Page 25 of 27

cause of action and same parties or their privies were involved in both cases. Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002). The previous lawsuit was brought in this court, which is a court of competent jurisdiction; the same causes of action were alleged in the previous lawsuit between the same parties; and the parties agreed to dismiss the lawsuit with prejudice which constitutes a final judgment on the merits for purposes of res judicata. Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001); Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999).

In their response plaintiffs state as follows:

The Glanzers are not interested in relitigating the wrongs done to them by Bank of America prior to the execution of the Confidential Settlement Agreement and Release. This case involves:
   (a)    what Bank of America did in 2013 (i.e., unilaterally - and with no justification whatsoever - adding $42,123.89 onto the loan as "Outstanding late charges and fees due";
   (b)    what Bank of America did in 2014 (i.e., publishing a Trustee's Sale notice in *The Excelsior Springs Standard* wherein it was falsely stated that the Glanzers had defaulted on their home mortgage); and
   (c)    what Bank of America did in 2014 (i.e., attempting to foreclose on the Glanzers' home).

None of the conduct described in the amended complaint which occurred prior to the settlement in the first lawsuit will be the subject of any claim in this case. I will leave it to the parties to raise the admission or exclusion of any of that evidence at trial when the time comes.

### III.    CONCLUSION

Based on the above, I find that counts one and two are preempted by the Fair Credit Reporting Act and count two fails to state a claim because defendant owed plaintiffs no duty as a matter of law. Therefore, it is

ORDERED that defendant's motion to dismiss counts one and two is granted. It is further

ORDERED that defendant's motion to dismiss count three is denied. It is further

26

ORDERED that defendant's motion to dismiss count four is granted in part. Count four is dismissed without prejudice. Plaintiffs have until December 12, 2014, to file an amended complaint separating the claims in count four into separate and distinct counts.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 20, 2014